**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:26-CR-158 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE aka NOEL REYES | ) | |
| SANCHEZ, | ) | |
| *Defendant*. | ) | November 23, 2026 |

**ORDER ON DE NOVO REVIEW OF MAGISTRATE JUDGE'S DETENTION ORDER**

Sarala V. Nagala, United States District Judge.

Defendant John Doe, also known as Noel Reyes Sanchez ("Doe"), is charged with making a false statement in a passport application, aggravated identity theft, and making a false statement to law enforcement officials. He has moved for *de novo* review of the Magistrate Judge's order detaining him pending trial. For the reasons discussed below, the Court concludes that while Doe poses a serious risk of flight because his true identity is unknown, there are conditions that will reasonably assure his appearance for court proceedings. Accordingly, the motion for *de novo* review is GRANTED, and Doe is ordered released pending trial, subject to stringent conditions of release that are set forth in a separate order.

## I. BACKGROUND

### A. The Complaint and Initial Bond Hearing

On July 28, 2026, law enforcement sought a criminal complaint against Doe, charging him with passport fraud, in violation of 18 U.S.C. § 1542, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. *See* Redacted Crim. Compl., ECF No. 9. In brief, the affidavit described that Doe had applied for a U.S. passport on October 21, 2024, in the name of another individual, whom the Government refers to as "Victim A," using Victim A's true identifying information, despite

that law enforcement believes he is not Victim A. *See* Redacted Aff. in Supp. of Crim. Compl., ECF No. 9-1.

Doe was arrested and detained by U.S. Magistrate Judge Dave Vatti. Order of Detention, ECF No. 14. Judge Vatti found that the Government had established, by a preponderance of the evidence, that Doe poses a serious risk of flight and that there were no conditions or combination of conditions that could reasonably assure his appearance at future court appearances primarily because Doe's true identity was unknown; thus, the U.S. Probation Office could not determine whether Doe had a criminal history under his true identity and the Court could not determine if he has any ties to foreign countries. *Id.* at 4. Judge Vatti also noted that, on the day of his arrest, Doe provided the arresting officers with different name and date of birth—not belonging to Victim A—claiming they were his identifiers. *Id.* While those identifiers belong to a real person, the photograph associated with that person did not match Doe. *Id.* Judge Vatti "acknowledge[d] the tension between the defendant's Fifth Amendment rights given the nature of the charges," but ultimately concluded that, after consideration of the factors set forth in 18 U.S.C. § 3142(g), pretrial release was inappropriate. *Id.*

B. The Indictment and Second Bond Hearing

On August 12, 2026, the grand jury issued an indictment charging Doe with making a false statement in a passport application, in violation of 18 U.S.C. § 1542; aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and making a false statement to federal law enforcement officials, in violation of 18 U.S.C. § 1001, in connection with a July 30, 2026, interview with law enforcement. Redacted Indictment, ECF No. 22. All of these charges relate to Doe's alleged use of Victim A's identity. Doe remained detained following his arraignment on August 27, 2026.

Doe moved for pretrial release on September 22, 2026, proposing a bond package in which six individuals would co-sign a $250,000 bond (and at least two would pledge real and/or personal property to secure the bond); Doe would be subject to home incarceration with GPS location monitoring; and Doe would be ordered not to obtain a passport. Mot. for Pretrial Release, ECF No. 25 at 12–13. The Government opposed the motion, arguing that Doe has a "powerful incentive to flee, largely because the weight of the evidence is strong and will likely lead to his eventual removal," that Doe has the "ability, skill, and wherewithal to flee to avoid prosecution," and that Doe has "proven to repeatedly untruthful and untrustworthy over the last three decades when interacting with courts, government agencies, and law enforcement." Gov't Opp. Br., ECF No. 36 at 2.

Judge Vatti again denied Doe's motion on October 14, 2026, finding that the Government had sustained its burden of proving that Doe posed a serious risk of flight, and that there were no conditions or combination of conditions that would reasonably assure his appearance. Order, ECF No. 39. Judge Vatti found the weight of evidence against Doe strong and noted that his true identity remains unknown. *Id.* Recognizing that this is an "unusual case" and that there is little to no precedent for releasing a person whose "real identity remains a mystery to the Court"—and again acknowledging the tension between Doe's Fifth Amendment rights and the implicit requirement that he provide his true identity to obtain bond—Judge Vatti concluded that the Court was "unable to conduct appropriate due diligence" to support pretrial release. *Id.*

Doe sought *de novo* review of the decision the next day. The undersigned held an oral argument on the motion on November 4, 2026, and indicated a willingness to release Doe on stringent conditions of release, secured by the proposed real and personal property. The Court sets forth its reasoning for that decision herein.

## II. LEGAL STANDARD

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The governing legal framework is the Bail Reform Act of 1984.

As pertinent here, under the Bail Reform Act, on the Government's motion, in a case that involves a serious risk that the defendant will flee, the judicial officer shall hold a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2)(A).[1] When, as here, "the charge does not trigger a statutory presumption that no conditions of release can adequately assured the defendant's attendance at trial, it is the government's burden to demonstrate by a preponderance of the evidence *both* that a defendant presents a [serious] risk of flight and that no condition or combination of conditions can be imposed reasonably to assure his required attendance." *United States v. Sabhnani*, 493 F.3d 63, 68 n.5 (2d Cir. 2007) (citing 18 U.S.C. § 3142(e)). "'A "serious risk of flight" means "a great risk—beyond average—that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision.'" *United States v. Romero-Martinez*, No. 3:23-CR-176 (JAM), 2024 WL 965150, at *4 (D. Conn. Mar. 6, 2024) (quoting *United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023)).

After the hearing and consideration of the factors set forth in 18 U.S.C. § 3142(g), the Court may either detain the person pending trial—if it concludes the Government has met its twin burdens of demonstrating he poses a serious risk of flight and that no combination of conditions

[1] The Government does not contend that Doe poses a risk of danger to himself or the community, such that 18 U.S.C. § 3142(f)(1) applies here. Nor does the Government invoke § 3142(f)(2)(B), which relates to whether the defendant poses a serious risk of obstruction of justice if released.

will reasonably assure his appearance at court proceedings—or order the person's release on conditions. The § 3142(g) factors are the nature and circumstances of the offense charged; the weight of evidence against the person; the history and characteristics of the person (including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and whether the person was under supervision at the time of the alleged offense); and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g)(1)–(4). The weight of these factors will "inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight." *United States v. Zhang*, 55 F.4th 141, 149–150 (2d Cir. 2022) (recognizing that the § 3142(g) factors are "key considerations for a detention decision").

Following a magistrate judge's order of detention, a defendant may seek revocation of the detention order. 18 U.S.C. § 3145. The district court must "fully reconsider a magistrate [judge's] denial or bail" and "not simply defer to the judgment of the magistrate [judge], but reach its own independent conclusion." *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

## III. DISCUSSION

The Court finds that the Government has sustained its burden of demonstrating that Doe poses a serious risk of flight, but that it has not demonstrated there is no combination of conditions that will reasonably assure Doe's appearance at future court proceedings. Thus, the Court GRANTS Doe's motion for *de novo* review of the detention order and finds he is suitable for pretrial release, under stringent conditions.

A. Risk of Flight

Upon weighing the various § 3142(g) factors, the Court first concludes that the Government has demonstrated, by a preponderance of the evidence, that Doe poses a serious risk of flight.

First, the nature of the offenses charged support a finding that Doe poses a serious risk of flight. Underlying each of the charged offenses is an accusation that Doe is not who he has claimed to be for many years, and his alleged access to the personal identifying information of Victim A raises the possibility that he could flee and evade detection, by use of identifying information that is not his own. Doe's alleged provision of yet another name and date of birth in July of 2026 further support the conclusion that Doe could flee and evade apprehension if he were to use another name during his flight. The Court recognizes that the purpose of a § 3142(e) risk of flight determination is "not to detain habitual criminals or deceitful persons," but rather to "secure the appearance of the accused at trial." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). In concluding that the nature of the offenses charged bears on risk of flight, the Court is not simply using the Government's view of Doe's deceitfulness as a proxy for detention eligibility. *See id.* (rejecting use of a *per se* presumption of flight where the crime charged involves fraudulent identification). Rather, it concludes that Doe's charges suggest he has the ability to utilize multiple identities that are not his own, which bears on whether, if he were to flee, he could avoid apprehension and prosecution. Thus, the nature of the charges supports the Court's conclusion that Doe poses a serious risk of flight.

Second, the weight of the evidence against Doe is strong. The affidavit supporting the criminal complaint, and the Government's subsequent proffer of its evidence, details that it believes it will prove that Doe knowingly used Victim A's identity when applying for a passport

in 2024 by utilizing Victim A's name, date of birth, and place of birth, and made a false statement to federal law enforcement officials by claiming his name was that of Victim A during a July 2026 interview.[2] That other districts may have declined to accept the case for prosecution does not necessarily bear on the weight of the evidence, as Doe suggests, because there could be a number of reasons for those decisions. Finally, assessment of this factor does not contravene the presumption of innocence, *see Zhang*, 55 F.4th at 151–52, and the Court concludes that the weight of evidence supports a finding that Doe poses a serious risk of flight because it heightens the chance of a conviction after a trial and provides an incentive to flee to avoid the consequences of such a conviction.

Doe's history and characteristics weigh on both sides of the ledger. On the one hand, the Government is correct that, without knowing Doe's true identity, it is difficult to fully assess Doe's history and characteristics, including whether he has any foreign ties that could increase his risk of flight. The Government contends that, without admitting his true identity, Doe simply poses too much risk to be released. But this position stands in tension with Doe's Fifth Amendment rights: if Doe were to admit he was not Victim A but was, in fact, some other person, he would be incriminating himself in the charged offenses, in which he stands accused of unlawfully impersonating Victim A.

Given the uniqueness of this scenario, neither party has been able to locate any reported decisions where an individual whose identity was unknown was released pending trial, and the Court's independent research has located none. But Justice Harlan's decision when acting as circuit justice in *Noto v. United States*, 76 S.Ct. 255, 257 (1955) is persuasive on the issue of

[2] Doe has moved to suppress his July 30, 2026, statements. *See* Mot. to Suppress, ECF No. 55. Even assuming—without deciding—that those statements should be suppressed, however, the Government's evidence related to Counts One and Two, charging passport fraud and aggravated identity theft in connection with the 2024 passport application, remains strong.

whether a defendant must waive his Fifth Amendment rights in order to be granted release pending trial. In *Noto*, a "high bail" was set for the defendant based on his refusal, on Fifth Amendment grounds, to disclose his whereabouts during a four-year period relevant to the indictment. *Id.* Judge Harlan wrote that "in fixing bail, as in a criminal trial, an unfavorable inference should not be drawn from the mere fact that the Fifth Amendment privilege has been invoked." *Id.* He ultimately granted the defendant bail, noting that the Government's position that the burden of proof was on the defendant to establish eligibility for release was "another way of saying that [the defendant] could only escape high bail under pain of waiving his Fifth Amendment privilege." *Id.* at 258. Here, likewise, the Government position appears to be that—absent waiver of Doe's Fifth Amendment rights—he cannot provide sufficient information to justify release. The Court finds that position untenable in light of the reasoning in *Noto*.[3]

Thus, the Court is must assess the information presently available to it about Doe and decide if the Government has demonstrated, by a preponderance of the evidence, that there are no conditions that could reasonably assure his appearance at future court proceedings. The information available to the Court includes the following: (1) after being sentenced to a 121-month term of imprisonment (in Victim A's name) in September of 2001 for conspiring to engage in distribution of crack cocaine, and being released from federal custody in September of 2008 to a five-year term of supervised release, Doe complied with his conditions of supervised release[4]; (2) aside from a motor vehicle incident that resulted in a fine, there is no indication that Doe has been arrested or charged with another crime since his release from federal custody in 2008, based on

[3] At oral argument, the Government suggested that *Noto* may be inapplicable here because it predates the Bail Reform Act by a few decades. But the Government has pointed to nothing in the statute itself, nor any case law, suggesting that the Bail Reform Act somehow displaces a defendant's Fifth Amendment rights.

[4] As the Court noted at oral argument, it is possible Doe may have attempted a crime while on supervised release, by applying for a U.S. passport in Victim A's name sometime in 2011. But Doe was never prosecuted for this conduct, nor charged with violation of his supervised release.

criminal history results linked to his unique fingerprints; (3) he has resided consistently in New York since his release from federal custody to a halfway house in 2008; (4) he has been in a stable and committed relationship with his partner for nearly thirty years, and together they raised five now-adult children; (5) he has been gainfully employed in various positions since his release in 2008; (6) he is a caregiver for his adult son, who has significant medical issues; and (7) he enjoys significant family and community support, as evidenced by the letters submitted to the Court and the willingness of several individuals to co-sign his bond. Additionally, although the Government suspected that Doe has ties to the Dominican Republic, authorities there have been unable to provide any corroboration of this suspicion. Thus, while the Court appreciates the Government's position that the Court simply does not know enough information about Doe's history or ties to foreign countries to assess his risk of flight, the Court concludes that the nearly two-decade record before it provides a sufficient basis to find that any risk of flight could be mitigated with stringent conditions of release.

Finally, the fourth § 3142(g) factor—the danger that could be posed by Doe's release—does not weigh heavily in the Court's consideration, as the Government's request for pretrial detention is focused on his risk of flight, rather than his dangerousness.

On balance, the Court concludes that the Government has demonstrated, by a preponderance of the evidence, that Doe poses a serious risk of flight because his true identity is unknown. But, as noted above, Doe's history and characteristics mitigate this concern.

B. Conditions

In order to detain Doe pending trial, the Court must also find that there are no conditions or combination of conditions that will reasonably assure his appearance at future court proceedings. On this issue, the Court concludes that the Government has not sustained its burden,

as the Court is convinced the highly restrictive conditions proposed by Doe will reasonably assure his appearance.

Doe has proposed that he be released on home incarceration with very limited exceptions to the home he shared with his partner, on a $500,000 bond that is secured by the real property of a friend and the personal property (three vehicles) of Doe's son, and is co-signed by five family members and one close friend. He is also willing to submit to GPS location monitoring and to a condition that prohibits him from obtaining any form of identification throughout the pendency of this case. The Court finds that these conditions, along with a condition that he be accompanied by an individual who has pledged property to secure his release any time he leaves his residence, provide reasonable assurance that Doe will appear at future proceedings in this case. Indeed, should he fail to appear—or violate any other condition of release—all of his co-signors have a significant amount to lose. Given Doe's demonstrated commitment to his family and loved ones, the Court trusts that he would not place the family members and close friend who have pledged to co-sign his bond at risk of losing their home (in one case), their vehicles (in another), or a significant sum of money.

Accordingly, the Court will release Doe pending trial, under the conditions set forth in a separate Appearance Bond and Order of Conditions Setting Release.

**SO ORDERED** at Hartford, Connecticut, this 23th day of November, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE